United States of America v. Priscila Yvette Cervantes. Katie Shepard for Ms. Priscila Cervantes. Alexander Reyes, Ms. Cervantes was his girlfriend. Danny and Chango were pretending to work for that fake cartel. The scenario created for December 2020 was that Chango was driving a tractor trailer with cocaine in it and Cervantes and Reyes took turns escorting that tractor trailer during part of Chango's drive from the Valley to Louisiana. Ms. Cervantes was convicted of aiding and abetting the possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine. The three issues on appeal are sufficiency of the evidence, a jury instruction error, and the erroneous exclusion of evidence. For the aiding and abetting count, the government had to prove that the substantive offense occurred. That requirement is repeatedly stated in this court's cases. It's also in the circuit's pattern jury instruction for aiding and abetting and it's what the jury was instructed on in this case. Notably, the government didn't charge attempt in this case. So since the government didn't charge attempt, it had to prove the substantive offense occurred and here that substantive offense was possession with intent to distribute cocaine. Do you have any cases that you can cite where a lookout is not considered to have possession? The cases where then the person who possesses the drug is an undercover agent because that's the problem here. The person who actually did the possessing of the drugs was the undercover agent. So we have cases where, for example, the Brito and McKnight cases that the government cites in its brief. In both of those cases, the defendants exercised control and dominion over the premises. So in the Brito case, it involved the defendant's own car was involved in the transaction and that's where the drugs were. And so the defendant was following behind in a different car, but he actually had the ownership of the premises where the contraband was found. And in the McKnight case and a lot of the felon and possession cases, the defendants have the ownership over the premises because they own the house or the car where the gun is found. And you don't think either of that applies here? It doesn't apply here because the person who had the possession of the drugs and was always planned to possess the drugs was Chango. And the Cervantes and Reyes were just escorting and providing security services. But then I guess the debate is how you define possession. Do you agree? I mean, I understand what you want to say is they didn't possess it because they didn't have the truck? Right. Is that it? There's also constructive possession, but constructive possession, as this court said in the Martinez case, is the ability to reduce something to one's direct physical control, which the way that the scenario was set up in this case, there's no way that Reyes or Cervantes was going to be able to put the cocaine in their own hands and reduce it to their own physical control because it was always, they were just along for part of the ride. A similar case, in fact, is the Reeves case that's also cited in the government's brief. But again, there was a big difference there because this is a Sixth Circuit case, but there the defendant exercised unique and exclusive selection of the drop site for the drugs. So he provided security services, but he was also the one who told them where they should drop these drugs in a remote location. But here we just have Chango driving down I-10 with a tractor trailer and he wasn't, he was, Reyes and Cervantes were only doing the escort for part of the drive. They were providing security. Yes, they provided security, but they didn't, that didn't give them sufficient dominion and control over the drugs that were locked in a tractor trailer that someone else was driving that they were never going to drive. But isn't it difficult to say that someone driving a police car following another vehicle that has the drugs in it isn't exercising a degree of control, dominion? They're exercising, they're providing security in the sense that they're looking out for other cop cars. By being there in a cop car, they're decreasing the likelihood that this tractor trailer is going to get pulled over. But they have to have sufficient either dominion and control over the contraband itself or the premises that contain the contraband, in this case the tractor trailer. And just by providing security, they didn't actually or constructively possess the drugs that were in the tractor trailer and that belonged to the cartel under this scenario. But any time they could pull the tractor trailer over if they wanted to, if they're in the police car, I mean, couldn't they? I mean, for, you know, so why aren't they accepting some kind of dominion and control? Because they're helping to escort something. And he said, and also when Chango said that the cocaine got to get through, Cervantes said, I got you. So she's committing to the enterprise. Right, but not to possess the drugs, not to have possession or exercise. It's a conspiracy, though. Well, there's separate counts. Sure. Sorry, there are separate counts for conspiracy. I was starting with the aiding and abetting count where the government has to prove that they aided and abetted a substantive offense of possession with intent to distribute. For conspiracy, the government had to prove that there was an unlawful agreement to possess with intent to distribute the drugs. So that can't just have been with Chango or with Danny since they were government informants and agents. And that's under the Sears case where they have, someone can't be in a conspiracy where they, someone secretly intends to frustrate the conspiracy. Even under aiding and abetting, there's two subsections to Section 2, right? Correct. And there's no distinction drawn between the jury instructions, the charge, or even the trial with respect to which section the defendant was tried under, correct? This was clearly a 2A case. It's not so clear if it's not indicated in the instructions or the jury verdict, is it? Well, the statute has the 2B section that involves willfully causing another person to commit the offense, which is in the cases cited in the government's brief of Wise and Haynes and Moreno. But in all of those cases, the defendants were the ones who caused the government informants to act. So it's a different type of liability that wasn't in this case. Here, Reyes and Cervantes didn't cause the drug cartel to move drugs from the Valley to Louisiana. They, for example, Reyes kept asking Danny for work because he wanted to make money, and Danny stalled him. So the whole scenario that was created was this drug cartel that was moving drugs. They were trying to get Reyes, as a police officer, to help them with security, but they weren't moving the drug. Reyes didn't intend for the drugs to be moved and then cause them to be moved. For example, in the Wise case, that was the one that involved the threatening letter. And the defendant and the co-defendant, who was not a government agent, both had the government agent type up the letter and then told the government agent where to send those letters. And so the defendant was the one who intended for the crime to be caused, or the crime to occur, and then willfully caused the government informant to take the steps that would be the commission of this crime. What was Reyes and Cervantes doing if they weren't facilitating the transportation of drugs? They were providing security services for this cartel. That happened to have drugs in the truck that they were escorting, correct? Right. Counsel, I'm very interested in talking about the jury instruction. Yes. That's the one about conspiring with a government agent. Yes. So under the Sears case, it's appropriate to give a Sears instruction when there's a risk that the jury believed that it could convict the defendant simply by believing that the defendant agreed with a government agent to commit the crime. And when evaluating a jury instruction error, the court has to look at the evidence in the light most favorable to the defendant, not to the government. What was the reason the court gave for not giving the instruction? What was the reason the court gave? I don't recall the reasoning besides the instruction was offered and the court declined. You know, it may be a good idea to give this instruction, and we might say it makes more sense, it's more careful to give the instruction, because it's prophylactic in some way to make sure that they're not relying on the wrong conspiracy. But we have case law that's United States v. Slaughter, for example. When you're already in an ongoing conspiracy with other non-government co-conspirators, it is not error to not give it. And it's really plain on this record that four months before the drug run, Reyes and Cervantes had transported $200,000 in drug proceeds from Lake Charles, that they spoke about more business opportunities, that they met about cartel things in September, that they had a lot of meetings and things before the agent got involved, the government agent. And then Reyes is the one who told Cervantes how to flash her lights to get the drugs, and then she flashed her lights. So why isn't under the Slaughter case this not error, even if it would have been prudent if we had been the district court in the circumstance? There's a lot there. Yes, and I have several responses. One is that Slaughter was a plain error case, and in that case, the defendant, a co-defendant testified about the drug business enterprise or relationship that he had with the defendant. Also, the scenario didn't start four months before with Cervantes and Reyes. It actually started with Danny and Reyes talking about doing this and talking all about, you know, doing the H. They talked a lot about heroin. Are you talking about September 2020 when they met with Danny, or are you talking about before? Before. February 2020 was when Danny and Reyes first met. Danny also had this auto auction, and they met at an auction. But by August 2020, Reyes and Cervantes were on the move in this deal together, weren't they? Well, the government didn't charge Cervantes with any sort of money laundering transaction. Reyes was charged with some money laundering accounts, but not Cervantes. So she was there in the car, but she wasn't actually charged with anything to do with money laundering. She also wasn't charged with anything to do with heroin, which there was a lot of discussion between Reyes and Danny and Chango about how the cartel was moving heroin. But the object of the conspiracy in this case was the conspiracy to possess with intent to distribute cocaine. And then also, this is a preserved issue on appeal, not plain error like in the slaughter case. What about the Delgado case? In that case, it was different. That's not a plain error case, is it? That's also a plain error case, yes. And in Delgado, the defendant had already been engaging in a conspiracy to transport drugs, and then she approached the government informant for assistance. So the idea for the conspiracy and the transporting of the drugs actually originated with the defendant in that case. She also was the one who called off a shipment and had actual bundles of marijuana in her— But how is this error under our case law? I'm sorry, regardless of whether those plain error cases or not, they say that where you are already in a conspiracy with someone else besides the government, then you don't have to give the instruction, where there's already another co-conspirator. And there was definitely another co-conspirator here, and we knew that from the beginning of the indictment. And we knew that long before that, actually. The Sears case says that the Sears instruction is appropriate when there's a risk that the jury believed that it could have convicted solely on the basis of a conspiracy with a government agent. And that's what we have in this case because of how important that evidence was that Chango told Cervantes that it was cocaine. And the government, in its closing argument, started with that fact. The government also highlighted in its closing argument how it was sufficient to convict on one occasion. That was in the jury instructions. So based on the evidence in this case, from the jury's perspective, without a Sears instruction, there was a risk that they could have believed that it was enough that Chango told Cervantes cocaine on December 8th. Well, of all the errors you raised, the jury instruction error is the one that's the most compelling to me. But I guess I'm listening to hear what harm was done by not giving the instruction. You had an instruction on conspiracy. If you find that the defendant conspired with one or more persons, you had that instruction. Right. So what was the harm in not giving the Sears instruction? The harm was that it deprived the defense of the ability to effectively present that argument. In closing argument, defense counsel told the jury you can't be in a conspiracy with a government agent. You can't be in a conspiracy with cops. But the defense counsel, unlike the government, wasn't able to point to a jury instruction that backed that up, that backed up that argument. And this Court's cases have recognized that the inability to support a closing argument with a jury instruction does show that that impaired the defense. But isn't the risk diminished by the fact that the charge of the conspiracy was a conspiracy between Reyes and Cervantes, not a government agent, and that the government prosecuted the case as a conspiracy between Reyes and Cervantes, not a government agent, and so the defense still had the ability to say, hey, the charge here is not involving some government agent, Chango and Cervantes, but involving Reyes and only Reyes. The indictment did charge Reyes by name, but also included people known and unknown to the jury. And the instructions on conspiracy said two or more people indirectly or directly agreed to commit a conspiracy. So I don't think it was that clear that the government—and I'm sorry, I'm over time. I don't think it's that clear that the government wasn't pursuing that theory. Again, the first piece of evidence that the government highlighted in its closing argument, it said there's no doubt that she's in a drug conspiracy because of what Chango told her on December 8th. But the government also said at the closing argument, ladies and gentlemen of the jury, you've heard evidence throughout this last week or so, and there's no doubt that when this investigation sting operation by the FBI began, it involved Alexander Reyes, a dirty cop. But at this point, there can also be no doubt that Reyes' girlfriend, Priscilla Cervantes, the defendant, made herself a target of the investigation because she was with Reyes and she was helping Reyes every step of the way. Every time you saw Reyes with drug proceeds, Ms. Cervantes was there. It's clear that the government is talking about Reyes and Cervantes. And so there's not this—it doesn't look like the government tried to confuse the jury or to— which is what I thought might be the case, which is why I poured into the closing argument that the government might have tried to say, oh, this unknown person is really this agent. And there's no—there's no—it's straight up the middle, Reyes and Cervantes. I think the—one, the defense was not able to point to a jury instruction when defense counsel argued that you cannot be in a conspiracy with a government agent. And then the government was able to come back in its rebuttal closing argument and say, don't listen to what defense counsel told you, listen to what Judge Hidner told you. So I think in light of the whole record, it's clear that the— and the focus is on what the jury could have believed under Sears. It's not about sufficiency of the evidence. It's about what the jury could have believed. And that evidence about Tango was clearly very important. Thank you. You've saved time for rebuttal. Thank you. Thank you, Your Honors. May it please the Court, Brent Chappell for the United States. I'd like to start off by clarifying the government's position on the aiding and abetting issue. First of all, we certainly agree with the suggestion that Reyes and Cervantes constructively possessed the cocaine in this case. But the Court need not decide that issue because there did not need to be— there did not need to be the commission of a crime in this circumstance. We know that for aiding and abetting to be guilty, sure, the Court has said that there must be proof that a substantive offense occurred. And then one, that the defendant associated with the criminal venture. Two, purposely participating in the crime. And three, stopped by their actions for it to succeed. But regarding this proof that the substantive offense occurred, in the specific context of government agents acting as principals, United States v. Wise hits the nail on the head. In that case, this Court acknowledged that generally there must be a quote, community of unlawful intent for aiding and abetting crimes. But in the context of a government agent, the Court said under Fifth Circuit jurisprudence, an aiding and abetting conviction for a completed substantive offense may stand even if the principal is a government agent with no guilty intent, and therefore no substantive crime was actually committed. So that's exactly what we have in this case. That's exactly the argument that Cervantes is making here. But this Court rejected it in Wise. But isn't— Go ahead. Go ahead. But isn't the defense argument that that's under a different subsection of the aiding and abetting statute, and that that subsection isn't applicable here? The defense's argument was raised for the first time in the reply brief that there is a distinction between subsections A and B of the aiding and abetting statute. That distinction was not made in Wise. Wise had a general indictment, a general verdict form, just like in this case. And then in Wise, the Court cited in full both subsections A and B of the aiding and abetting statute. So the Court did not make that distinction, and its predecessors, Haines and Moreno, likewise did not make that distinction. But should we make that distinction? If the Court wants to make that distinction, as was suggested during my colleague's argument, there's ample evidence to support that this is a subsection B case and not necessarily a subsection A case. So, I'm sorry, I didn't answer your question clearly. No, I do not believe this Court should make that distinction. The Fifth Circuit pattern jury instructions do not make the distinction themselves. Wise does not make that distinction. We know from other cases on this Court that's not in the briefs, again, this argument was raised for the first time in the reply brief, but that there was no substantive change to the law when subsection B was included in the statute, when it was added in the statute in the early 1950s. So, for that reason, there's no reason to make a distinction under these circumstances. But if this Court does want to make that distinction, then, again, a rational jury could have found from this evidence that Reyes willfully caused the commission of this crime. We know from the evidence that it was Reyes's idea to escort drugs, that's ROA 786, that he's the one who initiated contact with Danny, the confidential informant, and he said he would be willing to escort the load of drugs. The FBI said at that point they had stopped, they had attempted to stop conversing with Reyes, and he's the one who initiated all the conversations. They did not reach out to him, and this was, quote, completely at his doing, that's ROA 786. And so, this willfully caused is not sole and proximate cause. Willfully caused is, are you the one who made this happen? But for causation makes sense under these circumstances. And undoubtedly, none of this would occur, specifically, the escort of drugs would not have occurred, but for Reyes initiating it. Reyes was the target all along. Reyes is the one who's asking for work. And, of course, we know that Reyes and Cervantes were working together. They shared financial struggles. They wanted to make the money. They had shared families. They wanted to make the money so they could buy things for their families, so they could pay off their debts. So, they're the ones who caused this. If we were to make the distinction, and even to accept your representations regarding Reyes' initiation of the offense, do we have to then also find that Reyes and Cervantes exercised constructive possession of the drugs? No. No. Because, again, under WISE, there does not need to be, there does not have to be the commission of a substantive offense in order to uphold an aiding and abetting conviction when the principal is a government agent. But, of course, there are facts to support the constructive possession in this case. Assuming, arguendo, that if we were to find that there was error in either part of this case that we've been asking questions about, would we have to send it back even if the other part's solid? So, it's a bit complicated, I think, when we need to send it back. The government's position is you need not send it back at all, of course. Right. Right. I'm just assuming, arguendo, that either of these paths were successful, the Sears path or this aiding and abetting path. So, if the aiding and abetting conviction is vacated and the conspiracy conviction is upheld, there is a dispute as to the quantity. But if this Court affirms the quantity finding, then there's no reason to send it back because then we have concurrent sentences, the concurrent sentence doctrine should apply. I'm not foreshadowing. I'm just, because you're here, I want to be able to get all the questions answered. Of course, Your Honor. And then, of course, regarding the Sears instruction, for a lot of the same reasons the Court mentioned to my opposing counsel, this is not reversible error. Sure, could the District Court have given the instruction? Of course. Why doesn't the government encourage this, at least prophylactically, so you don't end up in these arguments on appeal? Well, Your Honor, in this circumstance, instructing the jury regarding the Sears rule would have confused the jury because the evidence just did not support it. Well, you could just say, and you can't rely on that conspiracy because you have to be with an actual co-conspirator. That's not confusing. Well, it's confusing because it was very clear throughout the entire case that Reyes was the co-conspirator. But do you know what the objection was at trial to giving it? I'm sorry? I asked the counsel opposite, what was the objection at trial? What was the reason the Court gave for not giving the Sears instruction? Because the evidence showed that Reyes was a co-conspirator. That's what the Court said. And it relied on the evidence. And that was it. That was it. And that's the right answer. Because the only way... Go ahead. I'm sorry. The only way the defense's theory has legs is if there's some foundation in the evidence to support the idea that Cervantes conspired with Chango to the exclusion of Reyes. And that's just not tenable based on these facts. Even the one conversation that Cervantes is relying on, that's when they were staging the escort with Chango and Cervantes in the parking lot. Reyes was a party to that conversation. He's literally on the phone with both of them at the same time. He has earbuds in each ear. And he's on speakerphone with Chango when Chango is saying, we've got to get these birds through. We've got to get these cocaines through. And you can hear in Government Exhibit 43 that Cervantes responds, we got you. And Reyes responds, we got you. So even that limited conversation, there's no way a jury could rationally look at it and say that Reyes was not a party to that conspiracy. Well, a better objection is that instruction is not a correct statement of the law. But that wasn't available because it was a correct statement of the law. The instruction that was offered, the serious instruction that was offered, was a correct statement of the law. I don't disagree with that. Do we have any non-plain error cases that say that you don't, that the court shouldn't give that instruction whenever there's abundant evidence of another conspiracy? Well, certainly Sears discusses when the instruction is appropriate. And that's when you're worried about a one and one, a non-government agent and a government agent. Here we have two non-government agents and a government agent. And then the Minotus Mejia case, I do not believe that's a plain error case. And they go through and discuss how if there's evidence of multiple non-government co-conspirators, there's no need for an instruction. And even in that case, they talk about the theoretical risk its omission could cause problems. And then they go through and they say, well, if you look at the record, it's clear the jury would not have been misled to believe they could have convicted on this theory. Would the government have a position on whether we were, if we were to encourage the giving of this instruction more freely going forward? No. The government does not have a position on that. I don't know that it's necessary in this case that this case is the one to give that encouragement in. Given the facts of this case, it was so clear that Reyes was the key cog in this whole conspiracy. But no, the government doesn't take a position on that specific advisement. And as the court said regarding the Sears instruction issue, Delgado is helpful because it talks about how, well, you could have given the instruction, but the rest of the record shows there's no need to in this case. It's not reversible error. The court did not abuse its discretion. Is the first time that Cervantes is associated with drugs, is that with Chango in December? Well, Cervantes knew that this was a drug operation from the start. Reyes kept her very much informed throughout the entirety of their ordeal that he's dealing with a drug cartel, they're seeking to make money, they're moving drug proceeds on two occasions, they meet to discuss performing drug rips and doing more jobs for the cartel. That's at the Wings restaurant with Danny, the informant. And then, of course, Reyes is keeping her abreast of all of the events that occur at the fancy dinner with the fake... Except for that statement where he says he didn't tell her it was drugs. Correct. Yes, yes. In some regards, he's keeping her out of making the money. I am certainly not suggesting Reyes is a good guy, but we know that they are sharing the proceeds in general. So she's expecting to make some money off of this to pay her debts to buy some of the lavish things that she wants to buy. Was there evidence developed at the trial that Cervantes was familiar with the relaxed drug lingo referring to Rolexes and other ways to refer to the drugs? There's not direct evidence that she was told that lingo, but the jury could have readily inferred that based on the degree of communication between Reyes and Cervantes as well as their very close relationship. They lived together. They eventually became married. They shared children under the same roof. They shared proceeds and income. And so you could certainly make that assumption. And not to mention, at the time of the escort, Reyes has her looking out for certain types of vehicles that could be police officers. He's telling her to relay information such as license plate if she sees that anything may look bad. And of course, at the moment, when Chango says this cocaine has got to get through, she knows for sure at that point. And I will say in that regard, going to the argument of the prosecutor in the context of this potential error from the omission of the Sears instruction, the prosecutor was arguing that this conversation occurred that shows Cervantes' knowledge. And that was the defense at trial, that she lacked knowledge that anything was illegal. She lacked knowledge that there were drugs in the vehicle. It was not that she conspired only with Chango to the exclusion of Reyes. So that's just another reason why the Sears instruction was not necessary in this case. So what's your understanding of the significance of your counsel opposite's argument with respect to constructive possession? And then what is your response to that argument under the facts of this case as to whether Cervantes exercised constructive possession of the drugs? The government's position is that Reyes exercised constructive possession of the drugs. And that is by virtue... Reyes and Cervantes together, but the stronger case is Reyes. And that's by virtue of their agreeing to escort the drugs. Their agreement to provide protection for it. Reyes even indicated he would use violence in order to protect the loads. And then, of course, as was discussed, we can't overlook the fact that he is a police officer in a marked unit. So if he wanted to reduce the drugs to his possession at any moment, he could have pulled over the car or exercised his apparent police power and taken possession of it. And still would have needed to get the key from Chango in order to access the drugs under lock and key. Of course, but this court has found constructive possession based on the control of the premises in which drugs were found. And he and Cervantes together did exercise some control. Remember, constructive possession can be joint. They exercised some control over the route of travel, over the protection of the load, and who was involved. Reyes bagged and almost insisted that Cervantes would be involved. So he dictated some of the particulars of the drug escort, no doubt. And then if we talk about conspiracy only, that's even stronger because in that circumstance we're just talking about the agreement. And so what did they agree to do? And we know that their conversations together, Reyes is acting like he's in control of this whole thing. He is like, we're going to do this. I'm going to tell them to go here. You're going to go here, all of the above. And so that all supports constructive possession. But, of course, the primary position is that this court need not decide that issue. If there are no further questions, the government will... I have your argument. Thank you. Sure. Thank you. Ms. Shepherd, you saved time for rebuttal. Thank you, Your Honor. In Wise and Haines in Moreno, the court did focus on the willfully caused language that's in Section 2B when affirming in those cases. So the court did make that distinction. It set forth the 2A and 2B and then quoted the willfully caused language. So in Wise and Haines in Moreno and all of those cases, the defendants intended for the crime to occur and they willfully caused the crime to occur by telling the government informant to type up the threatening letter and mail it to an agency or by, in Haines, it was the defendant who initiated the contact with the wholesale distributor of drugs in Mexico. And in the Moreno case, the defendant was the one who went to Colombia and arranged for the transport and was going to have the drugs delivered to her as well. So in this case, Reyes did not willfully cause this to happen. The scenario was a fake drug cartel that was moving drugs to Louisiana and money back through the Houston area. That was the whole scenario that had been created. And Reyes was asking Danny for work for a couple of months and he stalled him because the cartel doesn't work for Reyes. Reyes is providing these escort services. So he did not willfully cause these drugs to be moved under the scenario of this fake drug cartel. But if part of the conspiracy, part of the action, part of the crime, the substantive offense is the transport of these drugs and the escort of those drugs, doesn't the fact that Reyes is insisting on participating as the escort at least play a role in willfully causing the substantive offense? No, the drugs were moving anyway. It would have, this was, part of the scenario was that he was providing escort services, but they were moving the drugs anyway. And it was Chengo was the one who picked the route, not Reyes. He told Reyes that he was going to be coming through the Katy side. And he told Cervantes where to meet them. And the way that Agent Franson testified and the way that, which all of this is laid out on the reply brief, and the way that Chengo testified about the operation, they were in control of the operation and they were in control of moving the drugs. And then Reyes provided an escort service for part of the route through the Houston area. So when she flashed her lights, though, they took control of the drugs, didn't they? That wasn't initiating the transport. That was, there was confusion about Cervantes being at the wrong HEB. Cervantes was the one who moved to Chengo, not the other way around. It doesn't matter whether it's the whole, the initial transporting, but at some part along the route, they assumed responsibility. That was more of Cervantes being able to identify because the ghost car, the ghost truck that Reyes had talked about, didn't look like what they expected. So there was some confusion about whether this was actually the right person. She knew that flashing the lights was taking control of the drugs because that's what Reyes had told her, right? That's not correct. She flashed her lights and then that was supposed, Reyes told Chengo, just, she'll flick your lights at you and then roll out. That's not what Chengo did. He didn't follow his direction. She flicked her lights and then Chengo got out of his tractor trailer and went up to Cervantes, which Reyes definitely did not want to happen. Didn't he provide her all of the instructions on how to flash the lights in order to pick up the drugs? He told her to flash her lights so that Chengo could understand that that was her because she didn't have this police ghost car. So there was a lot of confusion where, well, first they're in the wrong HEB and then also there's confusion about the ghost car not looking like what the government, what Chengo expected it to look like. They thought it would have this decal that is hard to see unless you get up close and all it had was a little police sticker in the back car. So that was a way for Chengo to know that the escort was there was to flash the lights. But it didn't willfully cause Chengo to move the drugs in his tractor trailer. He was on a drive from the valley to Louisiana with these drugs under the scenario. So that makes it very different from Moreno and Haynes. Do we know what would have happened if they didn't meet up with the escort? Under the scenario, he would have kept driving. He was on his way to, he's not going to just stay in Houston. He's going to keep going where he's delivering the drugs. This wasn't like in the Reeves case there was this drop site that was picked out by the defendant. But here the drugs were going to keep on going to Louisiana under the scenario. They wouldn't have stopped and waited until they could get a different escort? Okay. We don't know. Yeah, I guess I don't know. I mean, I think that's hypothetical and speculation. I think also the idea that Reyes was going to pull over the tractor trailer because he was a police officer is speculation and wasn't the agreement or the plan in this case. So we would ask the court to reverse and remand. Thank you. Thank you. We appreciate your argument, Ms. Shepard,  It's very helpful to the court and the case is submitted.